Good morning, Your Honors. May it please the Court, I'm Betty Williams with the Montgomery Athlete, Inc., the appellant, Canna Care, Inc. I'd like to reserve three minutes of my time for rebuttal argument, and I will keep my eye on the clock here. The question in this case is whether a tax statute, Section 2AEE of the Internal Revenue Code, is subject to the excessive fines clause of the Eighth Amendment, and if so, whether a violation occurred when that statute was applied, resulting in a tax liability of nearly $875,000, which is more than a thousand times the net income of the business in those years. Counsel, as I read the record, this argument was not preserved. Is that correct? Correct, Your Honor. So, is the fact of the answer to this case that the arguments you're making were waived? No, Your Honor. The Court may hear this issue for the first time on appeal. The Supreme Court has recognized that courts have never played the waiver rule inflexibly, and that the rule is entirely discretionary, and it's well settled in this circuit that a court may, in its discretion, hear an appeal for it is not raised before its issue is purely a legal question, not dependent on the factual record or that the factual record is fully developed below, and this Court has also held that a legal issue may be heard if the question is sensitive to the case and important to the public. Well, it does seem to keep coming up in the business of psychosocialism. So, anyway, going ahead with the merits of it, I guess I have difficulty seeing how the imposition of e-tax and the disallowance of deductions would be fine. I mean, suppose Congress said, you know, the tax code is just complicated. We're not going to allow any deductions. Everybody just pays their taxes. Does that become a fine? Well, it's true that tax deductions are a matter of legislative grace, but that's not the end of the analysis. The, try not for excessive fines purposes, because if a fine serves a purpose that's other than remedial, if it's retributive or deterrent in any way, then it's in part punishment. And if it is in part punishment, it serves to punish the defendant, then it is subject to the excessive fines clause, and then the analysis becomes whether, in fact, it was so grossly disproportional to the alleged harm. Well, there is a forfeiture case, but can you cite any case where the denial of a deduction is under the Eighth Amendment? Not the denial, Your Honor, not the denial of a deduction, but a forfeiture of real property was determined to be a forfeiture that came to a financial punishment. So whether it's a forfeiture of an automobile or a piece of real property or a forfeiture of tax deductions, this is real money that was spent in the business that was operating in the California law. And so to take away the deduction is akin to a forfeiture of a, otherwise. Why is he taking it away? There has never been a deduction allowed for a drug business. Well, Your Honor, the, actually, unlawful businesses are entitled, that was the Edmondson case back in, prior to this. That's not my point. Okay, this disallowance of deductions has been in existence longer than the California law legalizing the sale of marijuana, correct? That's true. So when someone goes into a particular business knowing the rules of the road, how is that a fine? I mean, let's say that Congress has three tiers of taxes depending on how socially useful they think different kinds of businesses are. You know, personal services, you pay 10 percent. You know, selling cigarettes, you pay 20 percent. And you decide to go into that business. How does that even come up as a fine? There's a long line of cases that will say, regardless of what you think is called a tax fine, a disallowance, you look at what's the nature of what's actually happening. Right, but that's precisely my question, because what's happening is that the person chooses to go into this business knowing at the outset what their tax liability, how it will be calculated. So how is that a punishment? Because it's excessive. When you look at the Petalka GM three-factor test and you look at the harm caused, the government has not alleged any harm in this case. And in fact, the Canada Care would point to the lack of harm. It's providing the medicine, the medical marijuana, to the citizens of the state under California law. It is providing jobs. It's providing revenue to the state in the form of employment tax, sales tax, income tax. And the employment tax and the income tax are at the state and federal level, so there's no harm that's been articulated. But it's excessive. It's a parasite. So I guess part of the problem is they didn't charge enough for the marijuana, right? If they had charged more, they could have paid this tax and still had a profit, presumably. And if everyone followed the law, then everyone would be in that mode. Well, yeah, but the higher they charged for the product, then the higher their total income would be, and therefore the higher their tax would be. Because we're looking at when they take out the cost of goods sold, they're taking out the sugar and the flour they ate, not the rent, not the wages that were paid on which employment and income tax was also paid. They're not taking out those true real deductions of where money really left the business in order to operate. And in the states, now there are 29 states and Washington, D.C. that have made some form of medical marijuana lawful. Every student has certainly, except for one, has enacted some similar strategy. They're looking at a regulated industry where you have the taxes are being paid at the state level and at the federal level, and they've adopted this other important need for the product. You know, Laura, in your briefing, do you reference the Rush case? This is a federal court. This is a federal income tax. Should we not consider the fact that this is a legal operation under federal law in Washington, in Colorado, in California, and in all the other states you've described? What about Rush? Well, I think, Your Honor, that you have to look at the statute. Historically, what happens is you look at the statute where 280E was enacted, and it was 35 years ago. Our country was in crisis with street drug dealers who were trafficking drugs. The war on drugs was on, and Congress was concerned, and so a way to punish was to take away the otherwise available tax deductions of a business, whether it's their legal business or not. Just as all income must be reported, even illegal businesses who take deductions against their illegals for so long until this was enacted. At that time, they weren't looking, they weren't thinking about a regulated industry where physicians were prescribing something, and the trend in the country was to approve that. They were looking at the street drug dealers who were selling to anyone for any purpose they would pay. Well, you've cited the trend in the country. We've gone through numerous administrations, administrations of the right and perhaps of the left, and they've all refused to remove the section would apply. Should we not consider the part that local government has spoken through various executive and legislative activities, and marijuana remains a Schedule I drug? I don't think that this has come up as an option to be removed. I know I'm not certain about that. I can submit a brief on that if you'd like. The system spicer that's out there providing this, these are mom-and-pop shops. They are going to be able to go for lobbyists and go to, and maybe not necessarily want to identify themselves as trying to change this. I think that, yeah, I'm sorry. Well, I think the main issue, and it seems to be as it was in Olive, is that regardless of what the states do, this remains illegal, federal, whatever, and whether or not we think that's good policy, bad policy, or we don't care, that is federal policy, and so that only deals with the application of this section. It doesn't really answer your question about whether it can be construed as fine, but I still have difficulty understanding how not giving a deduction to everybody who wants it counts as fine for the people who don't get the deduction. So in analyzing the issue on the gross proportionality, the assessment is there is no other tax code in the entire tax code that takes over 1,000% of net income and would apply that rate. There are 20% and 5% and even 75% penalties in a civil fraud case that's applying to the tax, not the income, because I speak to tax. And this gets back to my question about how much you charge for the marijuana. So if 100% more had been charged for marijuana, then there would be a much smaller percentage of profit that would be the tax, right? I mean, it's all relative to how much profit would be even higher in that case, then, because you'd have even more income. Or I see what you're saying, because, well, presumably, then you would have, I don't know, as a direct medical question, that the tax would be higher or higher. I mean, the tax would be higher, but the deduction percentage of the tax would be lower. And I don't know if the people would be able to afford to pay for it. I mean, the whole point of, I think, the reasons the states were authorizing these regulated medicinal marijuana dispensaries to be, because they wanted to get away from Edmonds. If these medical marijuana dispensaries have to comply with the law, and 280 is applied in this punitive way, they're going to close their doors. And then we're back to 1982, and we're in Edmonds, and they're buying it on the street. So, he doesn't need to go to Congress and say, this is a bad idea, you should give the deduction. Or to apply the Eighth Amendment and look at the proportionality to the harm alleged. And so, you seem to be saying that the mere fact that it has an unfortunate financial effect equates to its being a fine in the first place. Because if everybody were taxed 40% of their income, it would be draconian, but it wouldn't be fine. It would just be a ring behind tax if we suddenly wanted to have government do poor things, for example. So, what you're really sort of inviting in my mind is the concept of how you decide whether something is fine in the first place versus whether it then is excessive. Because the mere fact that you pay a lot of taxes doesn't make it a fine as far as tax. But by taking away the ability to deduct the otherwise legitimate business, you have a higher tax to pay. You're paying a tax on the total income instead of on the net income. Right, and they could do that for everybody if they wanted to. They could say, you know, we want the internal revenue going to be 10 pages long. We're really tired of all of those shenanigans, so we're just going to have a flat tax, no deductions. Any comment that it could have said that it was a higher tax rate for that industry instead of by taking away all the deductions? If they could take deductions away from everybody and they could not, well, it would be a fine if Congress did that. I think it would be if it was done for any form of punishment. So it's just what's in their mind. So if Congress says we're going to pass a flat tax because it's easier and everybody will understand it, that's okay. And if they say we're doing a flat tax because we don't like people and we want to punish our citizens, then it's suddenly not okay. I would doubt that what the court cases say. In this case, the language of the statute actually says there's a sharply defined public policy against drug trafficking. And so the court, like the court in Austin, looked at the purpose of the punishment, the history of the words, and the understanding of the sanction and how much it looked like a punishment. And when you take a business that's earned a certain dollar amount and said, well, we're going to ask you to pay $875,000 not from this business, but that you have to buy it from some other place, it's not as if money's there. Even in the Jack and Jane case, some of these businesses, that's where they can't pay it. They're not making it up. The salaries were pretty high, too. There were some years of six-figure salaries to numerous people. There's money there. And the amount of deductions really are determined by your clients. They could have reduced expenses. We've been talking about profits, but you can increase profits by reducing expenses. The amount of the fine here is determined by your client, that is, the amount of deductions. Equivalently, the question is whether the application of J.D.E. is excessive and if it is, it violates the excessive fines clause. Did you want to say if anyone brought up something? Yes, please. Thank you. Thank you. Thank you, sir. May I please have the court have regard for the Commissioner of Internal Revenue. No court has applied the excessive fines clause to the Congress' denial of a deduction. This court shouldn't be the first. As Judge Graber pointed out, this issue is waived. And secondly, this... Should we exercise our discretion to deal with it? Because it seems to me they were getting a lot of cases involving marijuana dispensaries throughout the circuit and how they should be dealing with their tax liabilities. Would it be beneficial for us to exercise our discretion to submit this question? I don't think, Judge, it would be beneficial because you're right, this is kind of a black and mole situation. When one argument is struck down, another one pops up. So that's a reason not to decide it? Yes, I think so, because, Judge, they had two attempts in the task force level to raise any of these issues. Okay? There was a trial before Judge Krupa, Judge Krupa retired, the task force gave them an option to have another trial, and this second trial actually involved briefing, the answering briefs that came out after hours. I think that in this situation, taxpayers shouldn't be able to just wait until the circuit went well and then introduce whole new arguments, which is what the taxpayer is doing here. Maybe the tribunal below felt incompetent to weigh in on any constitutional issues. I think... No, that's not right, Pat. I think that the tax board is very capable and often embraces the opportunity to weigh in on constitutional issues and, from our perspective, does a very good job of it. Now... Would it make any difference to us if they had? I mean, we would be answering the question to no go anyway, right? That's right. But what's the benefit in this case of insisting on the raised issue level? Well, I think that, quite frankly, the traditional benefit of the waiver doctrine is that you get a more simple and fair adjudication of these issues rather than kind of a more compact and contractive thing. Except that everybody's had a chance to brief in full here. That's right, but... It's a strictly legal issue. There are no contested facts at this point. Well, I think that's right, especially in the question, which is a positive question, whether this is a fine, but as I heard my opposing counsel, she talks a lot more about incessantness, which does have a factual component. So I do think that it might have been something where the task force could have had something to say about that. But during that legal issue... If she is actually sitting at your argument, we should rule on this. If we don't rule on this, we win. No, he's arguing this way. No, I'm saying this way. So, yeah, Judge, I agree with you. I like your construction by argument, too. But I think that we win either way, because if you get to the merits, then, quite frankly, as this Court noted, Congress has the power to limit or abolish any deduction that it wants, and that is not a fine. We're talking about a different situation than in cases like the forfeiture case of Boston. So because Congress has the absolute power to decide up to the amount of the gross income, well, that was just recognizing this Court and the Supreme Court has said they can decide to disallow deductions, and that's exactly what they did here. It's completely within Congressional power within the 16th Amendment. And I would just like to point out the Supreme Court's decision in Tellier, which was relied on by the taxpayer here. In that case, there was some idea that simply because a business was immoral, that the business wasn't allowed a tax deduction. The Supreme Court said, no, you can't read that into the tax deductions of ordinary and necessary business expenses. But then it went on to say, deductions of expenses falling within general definitions may, to be sure, be disallowed by specific language. That's what we have here, and that's what the Tenth Circuit also understood in the previous solution. Now, turning briefly to the Boston case on which taxpayer places primary reliance, Boston was a civil forfeiture case. The Supreme Court's subsequent case in Cascadian recognized it with limited forfeiture contacts. And in their reply brief, taxpayer talks about the precedent relied upon by Austin and Halpern. Now, the Halpern case was subsequently revisited by the Court in a trio of cases, Kurth Ranch, Bursary, and Huntsman. And in those cases, the Supreme Court clarified that in the double jeopardy context, which is where Halpern's from, that just because there is a punitive purpose as well as a remedial purpose doesn't mean that there is punishment. Okay, so the idea that Boston stands for any time that there is any sort of deterrent value, then you're a punishment and a fine. That's not correct. As Pat Cascadian said, a fine is payment to a sovereign and is punishment for some offense. That's not what this section is. It's merely the disallowance of a deduction in the income tax as normally operable otherwise. One additional point, as Judge Colford pointed out, and as Judge Friedland pointed out, a lot of the optics that the other side is relying on in terms of enacting income really is neither here nor there. This business earned between $700,000 and a million dollars in gross income in payment of shareholder directors, six figures in two of the three years, five six figures in two of the three years. Plus automobile allowance. Plus automobile allowance. So they could have structured their business differently. Of course, under the California Health and Safety Code, a business like this has to be non-profit, but they certainly could have set aside the amount that would be due for taxes under the code. If there are no questions on the net operating loss issue or the local and state taxes issue. See, I have a question. Should this Court, in this case, be the first to determine that the E-Commitment clearly applies to corporations? No. I think the Supreme Court has left that an open question, and I think that considering the arguments below, I mean, the arguments in this case have been waived. There's just no reason for this Court to reach that on a certain issue. You would agree that corporations can be people protected by the law of rights, wouldn't you? I would. But not the E-Commitment. Yes, the Supreme Court hasn't spoken on it. So I'm in touch with it. Yes, altogether. Good enough for the questions. If you don't mind, there are. Thank you. Thank you. There's three votes remaining. Thank you, Your Honors. Four quick points. It is a punishment for some offense. The language in the statute specifically preferences the public policy against drug dealers. In 2012, the National Federation of Independent Business, the Supreme Court said whether an extraction is a tax or a penalty for constitutional purposes, simply by describing it as one or the other, it cannot teach what the true nature of the extraction is. And the HELP report said at some point an extraction approaches a punishment, and it's up to the Court to decide when that actually occurs. There is no decisional law from the Supreme Court nor the Ninth Circuit which is categorically held that the excessive fines clause does not apply to a civil tax case. And I would say that a corporation, although it hasn't been decided about the E-Commitment, because a corporation is protected by the due process clause of the Fifth Amendment, protecting it from oppressive civil sanctions, it would follow that a corporation should also be protected from such sanctions by the Eighth Amendment. Do you have any further questions? Thank you very much. Thank you. The case just started. You submitted it once again. We appreciate it and hope all of the interesting arguments from both counsel.
judges: Graber, Friedland, Guilford